LTHOMAS F. DALEY, Judge.
This is an appeal by the plaintiff, Henry Steadman, from a judgment denying his request for penalties and attorneys’ fees.
FACTS:
Appellant’s son, Clay Steadman, was involved in an automobile accident while driving appellant’s car. Appellant filed suit against his uninsured motorist carrier, Allstate Insurance Company (Allstate), to recover for Clay’s personal injuries and property damage to the car. The petition included allegations that Allstate failed to timely pay his claim and that he was entitled to recover penalties and attorney fees. The parties stipulated that the personal injury claim would be tried separately from the property damage claim. Following a trial on the merits regarding the property damage claim, the trial court rendered judgment in favor of Allstate, dismissing 1 .-¡appellant's claim. It is from this judgment that Mr. Steadman has appealed. This appeal does not involve the personal injury claim.
*913 At trial, Mr. Steadman testified that he called Allstate to report the loss numerous times. He was told by an Allstate representative to take the car to Ray Brandt Collision Center (Ray Brandt) to be repaired. He testified that Clay brought the car to Ray Brandt and made arrangements to have it repaired. On July 16, 1997, he paid the Ray Brandt invoice in the amount of $2,886.24 in cash and picked up the car. He received a letter from Allstate dated August 5, 1997, stating that his claim had been completed. Mr. Steadman returned this letter to Allstate indicating he did not consider the matter completed. Thereafter, Mr. Steadman wrote a letter to Allstate dated August 26, 1997, stating that in the last forty-five days he had made four requests for a proof of loss form, and since he never received the form, he was assuming Allstate had waived the filing of the form. He attached the copy of the paid invoice from Ray Brandt in the amount of $2,886.24 and demanded payment of the claim minus the deductible for a total of $2,686.24. Mr. Steadman testified that he received a check from Allstate dated September 30,1997 in the amount of $2,326.02. The difference between the amount demanded and the amount paid was due to Allstate’s refusal to pay for the cost of repainting the entire car. Allstate took the position that the entire car did not have to be painted. Mr. Steadman refused to sign Allstate’s check because it stated that this was the final settlement for his claim. Instead he forwarded the check to his attorney.
On cross-examination, Mr. Steadman was questioned regarding a check dated June 25, 1997, mailed to Ray Brandt by Allstate in the amount of $2,070.91 made out to Ray Brandt and Henry Steadman. Mr. Steadman’s name was written on the back of this check. Mr. Steadman denied knowledge of this check, stating he did not sign | ¿the back of this check. He did state that the first time he went to pick up the car, he was not satisfied with the paint job. Based on his dissatisfaction, the car had to be repainted and he returned a week later to pick up the car.
Mr. James Smith testified that he worked at Ray Brandt and did the estimate on Mr. Steadman’s car. He stated the entire ear was repainted at Mr. Stead-man’s request and denied that the entire vehicle needed to be repainted. Mr. Smith testified that the color of the car was “basic factory green” and they would not have had a problem matching the paint on the ear. Mr. Smith testified that he told Mr. Steadman that if he was dealing with an insurance company they were only going to pay for the damaged areas of the car to be repainted. Mr. Smith stated that when Mr. Steadman first brought the car to Ray Brandt, they were not informed that Mr. Steadman was making á claim with Allstate.
Mr. Luke Paternostro testified that he was the general manager of Ray Brandt when the Steadman car was repaired. Mr. Paternostro testified that he told Clay that the paint color could be matched and that Allstate would not pay for the rest of the vehicle to be repainted. He testified that when Mr. Steadman came to pick up the car, there was a heated discussion regarding the paint.
Mr. Paternostro explained that Ray Brandt was a part of a “PRO” with Allstate. “PRO” stands for priority repair order and as part of this program a customer brings his vehicle in to get repaired. Ray Brandt does the estimate and “uploads” the estimate to Allstate on a computer. Once the estimate is approved by Allstate the repairs to the vehicle are started. Allstate then forwarded to the repair shop a check for the amount of the approved estimate. When Ray Brandt receives a check from Allstate, the check is attached to the customer’s repair order. *914 When the customer | ¡¡comes in to pick up the vehicle, they sign the check. Mr. Pa-ternostro testified that Ray Brandt does not sign customer’s names on the checks.
Tyra Smith, a claims adjuster for Allstate, testified that she processed Mr. Steadman’s claim. As part of the claims process, she keeps a diary on the computer and makes entries as work is being done. The diary for Mr. Steadman’s claim was introduced into evidence. Ms. Smith testified that she received Mr. Steadman’s claim on June 5,1997. She was unsuccessful in her attempts to contact Mr. Stead-man by phone, so she mailed a letter to Mr. Steadman to inform him that she was processing his claim. She testified that the appointment she made for him at Ray Brandt for June 13, 1997 was canceled by Mr. Steadman. Shortly afterward, Allstate received the PRO estimate from Ray Brandt. Ms. Smith explained that in the PRO system, Allstate does not direct a customer to one particular shop. They tell the customer the shops available and let the customer choose the shop. She testified that a check in the amount of $2,070.91 dated June 25, 1997 was mailed to Ray Brandt based on the estimate. A supplemental check in the amount of $255.11 was mailed to Ray Brandt to cover the cost of damage that was discovered while the repairs were being performed. Ms. Smith explained that she sent a letter to Mr. Steadman on August 5, 1997, stating the claim was resolved. She did not know there was anything unusual about this claim until she received the letter back from Mr. Steadman with a notation that he did not consider the matter resolved. She brought the letter to her supervisor who called Ray Brandt. It was discovered that Mr. Steadman and Allstate both paid for the repairs. At that point she issued a check to Mr. Steadman. This is the September 30, 1997 check that Mr. Steadman never cashed.
At the conclusion of trial, court recessed and the trial judge stated that she was going to deliberate. She returned and gave extensive reasons for judgment. She | fiConcluded that Allstate’s records indicate that on June 23, 1997 Allstate gave Ray Brandt permission to perform the work covered in the original estimate. She held that Allstate’s authorization and agreement to pay for the work was a tender. She found that the confusion over the check sent to Ray Brandt, which resulted in Ray Brandt being paid twice could not be attributed to Allstate. She further found that once Allstate realized there was confusion over the checks and that Ray Brandt had been paid twice, it was reasonable for Allstate to spend a reasonable amount of time finding out what happened to the checks that were sent to Ray Brandt. The court further found that Allstate did not have to reimburse Mr. Stead-man for the costs of repainting the entire car because the damaged portion could be painted to match existing paint on the undamaged portion of the car. At the conclusion, the court ordered Allstate to reissue the September 30, 1997 check since it was stale.
DISCUSSION:
On appeal, appellant argues the trial court erred in finding Allstate was not arbitrary and capricious in failing to timely pay its insured. Appellant further argues the trial court erred in finding he was not entitled to the full sum of $2,686.24.
LSA-R.S. 22:658 provides that all insurers shall pay the amount of any claim due any insured “within thirty days after receipt of satisfactory proofs of loss” from the insured. The statute further provides that if the failure by the insurance company to make such payment in thirty days is found to be arbitrary, capricious, and without probable cause the insurer shall be subject to a penalty. LSA-R.S. 22:1220 *915 further provides that an insurer has a duty of “good faith and fair dealing” and its failure to make a reasonable effort to settle claims with the insured subjects the insurer to liability for damages sustained as a result of its failure to comply with this statute.
|7A plaintiff seeking to recover under these statutes has the burden of proof. Ramirez v. Ware, 28,879 (La.App. 2 Cir. 9/25/96), 680 So.2d 1302. Due to the penal nature of these statues, they must be strictly construed; penalties and attorney fees will not be assessed against an insurer unless it is clearly shown that the insurer acted arbitrary, capricious, and without probable cause. Block v. St. Paul Fire & Marine Ins. Co., 32-306 (La.App. 2 Cir. 9/22/99), 742 So.2d 746. Whether an insurer acted in bad faith rests on the facts and circumstances of each case because a prerequisite to any recovery under these statutes is not only that the insurer failed to pay, but that its failure to pay was arbitrary, capricious, and without probable cause. Id. A trial court’s findings of fact will not be set aside on appeal unless the trial court committed manifest error and those findings were clearly wrong. Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880. The task of the appellate court is not to decide whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was reasonable based on the record. Id.
The testimony and evidence introduced at trial indicates that Mr. Steadman brought his car to Ray Brandt to be repaired. He did not inform Ray Brandt that he was making a claim with Allstate. In fact, he testified that he told Ray Brandt to repair the car and he would deal with the insurance company. However, Allstate’s records and the testimony of Ray Brandt’s employees indicate that the original estimate of June 2, 1997 was converted to an Allstate estimate according to the PRO procedure on June 16, 1997. Repairs to the car were begun shortly thereafter and as was customarily done with a PRO claim, Allstate forwarded a check for this claim to the repair shop, Ray Brandt, on June 25, 1997. Mr. Steadman then picked up the car and paid the repair bill in cash on July 16, 1997. The testimony indicates that Mr. Steadman did not notify Allstate that he was dissatisfied with the way his claim was |sbeing processed until he returned Allstate’s August 5, 1997 letter. Even at that time he did not explain the problem to Allstate. The evidence indicates that the first time Mr. Steadman demanded payment from Allstate was in his August 26,1997 letter.
The trial court found that Allstate’s act of forwarding checks for the repairs to Ray Brandt was a tender. We do not dispute this finding, but determine that the trial judge failed to address Allstate’s obligation once Ray Brandt returned to Allstate the amount tendered. The trial court record establishes that on July 16, 1997 Ray Brandt returned to Allstate the amount of $2,070.91. The check stub contains a notation “Reimb. for check deposited in error.” We find that once Mr. Steadman forwarded the August 26, 1997 letter to Allstate in which he made a formal demand for payment and Allstate discovered that the amount tendered to Ray Brandt had been returned to Allstate, Allstate had a duty to make an unconditional tender of the funds not in dispute to Mr. Steadman. Instead of making an unconditional tender to Mr. Steadman after the double payment and refund were discovered, Allstate foiwarded a check dated September 30, 1997, to Mr. Steadman in the amount of $2,326.02, which contained the phrase “final settlement of claim under collision coverage arising from accident on 4/21/97.” The September 30, 1997 check was a conditional tender. A conditional *916 tender does not satisfy Allstate’s legal requirement under 22:658. See Balehi Marine, Inc. v. Firemen’s Ins. Co., 489 So.2d 1360 (La.App. 1 Cir.1986). Accordingly, the trial court’s ruling that Allstate was not arbitrary and capricious in handling Mr. Steadman’s claim is reversed. Allstate had no basis for conditionally tendering the cost of repairs, which were not in dispute. We acknowledge that Allstate did not have to tender the entire repair costs since the cost of repainting the entire car was in dispute. However, Allstate had no justification for seeking a full | release before tendering the funds not in dispute. Allstate’s failure to unconditionally tender the undisputed amount was arbitrary and capricious.
Allstate violated LSA-R.S. 22:658 and is liable for penalties and attorney fees because it failed to unconditionally tender the undisputed amount due for property damage. Allstate argues that payments were unconditional. As a proof of their unconditional nature they point to their practice of supplementing property damage payments when hidden damage is uncovered after the original estimate. We are not swayed by that argument. We can not ignore the fact that the conditional language on the check “final settlement” could and has in the past been used by insurance companies to evidence full satisfaction and support arguments to dismiss supplemental or disputed claims. As a result, Allstate is Ordered to pay Mr. Steadman $1,000.00 as penalties for failing to make an unconditional tender as required by R.S. 22:658. Additionally, this matter is remanded to the trial court for a determination of reasonable attorney’s fees incurred by Mr. Steadman for the prosecution and collection of the covered damages incurred as a result of the accident.
In conclusion, we find the trial court’s denial of Mr. Steadman’s demand for the entire cost of the repairs, which included the cost of repainting the entire car was reasonable. For the reasons stated above, the trial court’s finding that Allstate complied with the requirements of R.S. 22:658 is reversed, Mr. Steadman is awarded $1,000.00 in penalties and this matter is remanded to the trial court for a determination of reasonable attorney’s fees.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.