# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 22-634

CHARLES GUILLORY AND
TAMMY GUILLORY

VERSUS

LOUISIANA FARM BUREAU
CASUALTY INSURANCE COMPANY

**********

# APPEAL FROM THE
# FOURTEENTH JUDICIAL DISTRICT COURT
# PARISH OF CALCASIEU, NUMBER 2021-1254
# HONORABLE CLAYTON A. DAVIS, DISTRICT JUDGE

**********

# SHARON DARVILLE WILSON
# JUDGE

**********

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**Michael K. Cox**
**Somer G. Brown**
**COX, COX, FILO, CAMEL, WILSON & BROWN, LLC**
**723 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 436-6611**
**Counsel for Plaintiffs/Appellees:**
     **Charles Guillory and Tammy Guillory**

**Charles C. Garrison**
**Staci Know Villemarette**
**Lauren Camel Begnaud**
**CAFFERY, OUBRE, CAMPBELL & GARRISON, LLP**
**100 East Vermillion Street, Suite, 201**
**Lafayette, Louisiana  70501**
**(337) 446-2442**
**Counsel for Defendant/Appellant:**
     **Louisiana Farm Bureau Casualty Insurance Company**

**Wayne J. Lee**
**Heather S. Lonian**
**STONE PIGMAN WALTHER WITTMANN, LLC**
**909 Poydras Street, Suite 3150**
**New Orleans, Louisiana  70112**
**(504) 581-3361**
**Counsel for Defendant/Appellant:**
     **Louisiana Farm Bureau Casualty Insurance Company**

**WILSON, Judge.**

Louisiana Farm Bureau Casualty Insurance Company (LFBC) appeals several adverse rulings in this suit for breach of contract, penalties, and attorney fees regarding LFBC's handling of a claim for damages resulting from Hurricanes Laura and Delta. For the reasons that follow, we affirm the trial court's rulings, the jury's verdict and the judgment signed in accordance therewith, and the trial court's award of costs.

## I.

## ISSUES

This appeal presents the following issues:

1.    Whether the trial court erred in denying LFBC's motion to recuse Judge Davis and/or in declining to refer the motion to an ad hoc judge.

2.    Whether the trial court correctly instructed the jury as to the legal standard for claims asserted under La.R.S. 22:1973 and/or 22:1892.

3.    Whether the jury committed manifest error in finding that each and every payment by LFBC to Plaintiffs was not timely made within thirty days of receiving satisfactory proof of loss.

4.    Whether the trial court erred in permitting Plaintiffs to introduce and argue that evidence concerning their withdrawn additional living expenses (ALE) claim as evidence of their alleged mental anguish, while simultaneously preventing LFBC from introducing countervailing evidence on this issue.

5.    Whether the trial court erred in awarding costs that are allegedly not recoverable by law.

## II.

## FACTS AND PROCEDURAL HISTORY

LFBC issued a homeowner's policy covering the residential property owned by Charles and Tammy Guillory and located on Oak Park Boulevard in Lake Charles, Louisiana. The policy had coverage limits of $169,000.00. The property

was significantly damaged by Hurricane Laura on August 27, 2020, and by Hurricane Delta on October 9, 2020.

On or about August 31, 2020, Plaintiffs initiated a claim under their homeowners policy. LFBC sent its adjuster, Corey Daigle (Daigle), to inspect the property on September 11, 2020. Plaintiffs contend that this is the date when LFBC had sufficient proof of loss. Following the inspection, Daigle prepared an estimate that calculated the replacement cost value of the residence at $51,721.61.

After Hurricane Delta made landfall on October 9, 2020, Plaintiffs contacted LFBC and reported additional damage to their property. On October 19, 2020, LFBC adjuster Kris Trahan (Trahan) inspected the property. Daigle and Trahan consulted with each other regarding their inspections of the property, and Daigle revised his earlier estimate.

LFBC made the following payments:

$44,370.83 on September 16, 2020 (damages caused by Laura)
$15,569.77 on October 19, 2020 (additional damages caused by Delta)
$5,440.86 on December 1, 2020 (supplement to roof replacement cost)
$25,955.98 on December 8, 2020 (remediation services)
$14,000.00 on December 10, 2020 (repairs to air conditioner)
$63,662.56 on August 19, 2021 (remaining unpaid dwelling limit)
$51,721.61 on October 5, 2021 (contents claim)

Plaintiffs retained the services of a public adjuster, Kermit Sonnier (Sonnier). Sonnier estimated the replacement value cost at $198,441.66. LFBC then assigned a claims representative, Chris Fontenot. Fontenot requested copies of any estimates that Sonnier prepared on behalf of Plaintiffs. In the course of trying to obtain these estimates, Fontenot was informed that Plaintiffs were represented by counsel.

On March 31, 2021, Plaintiffs filed a petition for breach of contract, penalties and attorney's fees pursuant to La.R.S. 22:1973 and 22:1892. They alleged that LFBC failed to pay all amounts owed under the policy within sixty

days after LFBC received satisfactory proof of loss and underpaid their claims. Plaintiffs alleged that this failure resulted in significant delays in their being able to return to their home, thereby causing them severe anxiety, mental anguish, and emotional distress. They further alleged that LFBC failed to compensate them for their additional living expenses, but this claim was later dismissed.

On May 4, 2022, the 1442 deposition of LFBC was to take place. Plaintiffs got a subpoena requiring LFBC to produce certain financial documents that were not listed on the original notice of deposition. LFBC moved to quash the subpoena. The trial court denied the motion, and LFBC applied for writs to this court. This court denied the request for a stay and denied the writ application. *Guillory v. La. Farm Bureau Cas. Ins. Co.*, 22-286 (La.App. 3 Cir. 5/11/22) (unpublished writ decision), *writ denied*, 22-758 (La. 5/11/22). The Louisiana Supreme Court also denied the request for stay and denied writs.

On May 3, 2022, LFBC filed a motion to recuse Judge Davis based on certain adverse rulings and based on the assertion that Plaintiffs' attorneys had contributed 72.73% of the total contributions to Judge Davis' campaign to get elected to the Third Circuit in November of 2022. Judge Davis denied the motion to recuse as untimely. No writ applications were taken with regard to the denial of the motion to recuse.

The matter proceeded to trial by jury on May 19, 2022. The jury found in favor of Plaintiffs. The jury specifically found that the payments (except those on September 16, 2020, and October 5, 2021) were not made within thirty days of LFBC's receipt of satisfactory proof of loss and that such failure was arbitrary and capricious. The jury found those payments were also not paid within sixty days of satisfactory proof of loss. The jury awarded $65,000.00 to each Plaintiff for mental anguish and emotional distress and statutory penalties in the amount of

$260,000.00. Plaintiffs' counsel was awarded attorney's fees in the amount of $152,978.60, and Farm Bureau was taxed with all costs. On July 5, 2022, the trial court signed a judgment in accordance with the jury's verdict. Farm Bureau now appeals.

### III.

### LAW AND DISCUSSION

*Motion to Recuse*

We must first determine whether the trial court correctly denied LFBC's motion to recuse Judge Davis as untimely. Louisiana Code of Civil Procedure Article 154(A) provides that the motion to recuse must be filed:

> no later than thirty days after discovery of the facts constituting the ground upon which the motion is based, but in all cases prior to the scheduling of the matter for trial. In the event that the facts constituting the ground upon which the motion to recuse is based occur after the matter is scheduled for trial or the party moving for recusal could not, in the exercise of due diligence, have discovered such facts, the motion to recuse shall be filed immediately after such facts occur or are discovered.

If the motion to recuse is untimely, the trial court can deny the motion without the appointment of an ad hoc judge or hearing, but in that case, the trial judge "shall provide written reasons for the denial." La.Code Civ.P. art. 154(C). Judge Davis denied the motion as untimely and filed written reasons in accordance with Article 154.

The notice of jury trial in this case is dated April 26, 2022. This motion to recuse was not filed until a few days before trial in what the trial court and Plaintiffs characterized as an attempt to get a continuance after their motion to continue the trial date was denied during a conference call on March 31, 2022.[1]

---

[1] The motion to continue did not include a rule to show cause and instead contained a decree rescheduling the trial date. That portion of the motion was lined through by the trial court with annotation that the motion was denied. In the written reasons for the denial of the motion to

4

LFBC alleges it was not aware of the contributions to Judge Davis' campaign by Cox, Cox, Filo, Camel, Wilson & Brown, LLC, until shortly before its motion was filed, but Plaintiffs assert that in the exercise of due diligence, as required by La.Code Civ.P. art. 154(A), LFBC should have known about the contributions because such information was publicly available. The comments to Article 154 warn against "a late-filed motion to recuse as a manner of obtaining a continuance of the trial."

Here, LFBC relies on *Riddle v. Premier Plaza of Monroe, LLC*, 51,173 (La.App. 2 Cir. 2/15/17), 216 So.3d 170, to relieve them of their burden of due diligence by asserting that Plaintiffs and the trial judge were in the best position to recognize a potential conflict that would merit recusal and should have disclosed this fact to LFBC. In that case, the trial judge was a member of the board of the Monroe Symphony Orchestra, which was the organization for which the plaintiff had been hired to direct a fund-raising event and against whom the plaintiff filed a breach of contract action that was pending before the trial judge. The *Riddle* case is distinguishable since it involved a petition to annul a judgment that Riddle alleged was obtained by fraud or ill practices perpetrated by the trial judge who dismissed her suit.

In *Langlinais v. Union Oil Co. of Ca.*, 20-229 (La. 5/14/20), 296 So.3d 601, the motion to recuse was filed on June 28, 2019, over a year after the suit was filed, and nearly three years after the campaign advertisement, which mentioned the plaintiffs' counsel, was published. The plaintiffs' counsel admitted that they were aware of the advertisement in April of 2018 when they first filed suit. The Supreme Court found that the motion to recuse was untimely.

recuse, the trial court noted that LFBC did not object to the informal handling of the motion in the conference call.

In this case, the Candidate's Report filed by Judge Davis was attached to LFBC's motion to recuse. That report was filed on January 13, 2022, and the report indicates that the contributions in question were made on November 9, 2021. Thus, it is clear that the facts that form the basis for the motion to recuse were discoverable on January 13, 2022. Louisiana Code of Civil Procedure Article 154(A) requires the exercise of due diligence. Thus, we agree with the trial court that the exception provided in Article 154 is not applicable to extend the thirty-day time period because the facts that LFBC allege as the grounds for recusal were discoverable, with the exercise of due diligence, before this matter was set for trial.

"[T]he applicable standard of review of the recusal issue is one for abuse of discretion." *Menard v. Menard*, 19-580, 19-581, p. 19 (La.App. 3 Cir. 3/11/20), 297 So.3d 82, 95. We find no abuse of discretion in either the trial court's failure to refer the matter to an ad hoc judge for hearing or the trial court's denial of the motion to recuse as untimely. Therefore, we need not consider the merits of the motion.

*Jury Instructions*

LFBC asserts that the trial court failed to properly instruct the jury as to the definition of the term "arbitrary and capricious" as used in La.R.S. 22:1973 and La.R.S. 22:1892. LFBC's proposed jury instruction number two stated:

> An "arbitrary" act is one "based on random choice or personal whim, rather than reason or system[.]"[] Capricious is "given to sudden and unaccountable changes in behavior." The phrase "arbitrary, capricious, or without probably cause" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse[.]"[]

Proposed jury instruction number three stated: "Arbitrary and capricious describes an insurer whose willful refusal of a claim is not based on a good faith defense." Proposed jury instruction number five stated: "When there are substantial,

6

reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, the insurer's failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."

Louisiana Code of Civil Procedure Article 1793(C) provides, in pertinent part, that: "A party may not assign as error the giving or failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of the objection." "[O]ff-the-record objections are insufficient." *Libersat v. J&K Trucking, Inc.*, 00-192, p. 5 (La.App. 3 Cir. 10/11/00), 772 So.2d 173, 176, *writ denied*, 01-458 (La. 4/12/01), 789 So.2d 598.

In this instance, the record reflects that defense counsel specifically objected to the trial court's failure to include LFBC's proposed jury instruction number eleven[2] and to the inclusion of Plaintiffs' third supplemental and proposed jury instruction.[3] While the charge conference was not transcribed, the trial transcript reflects that objections to the jury charges were made on the record. Defense counsel's objections make no mention of the requested jury instructions that are the basis of this assignment of error.

In *Libersat*, this court exercised its discretion to review the defendant's objections to the jury instructions because the trial court made statements that caused the defense to erroneously believe that their objections, which were made during an off-the-record charge conference, were being preserved for review. That is not the case here. The record reflects that defense counsel was given the

---

[2] LFBC's proposed jury instruction number eleven reads: "An insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrary in delaying payment."

[3] Plaintiffs' third supplemental and proposed jury instructions reads: "Statutory penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings."

opportunity to make his objections on the record and did so with respect to two separate charges. No blanket objection to the charges was made, and defense counsel made no objection to the trial court's failure to include proposed jury instructions numbers two, three, and five. Therefore, we find that this assignment of error is not properly before this court as it was not preserved for review.

*Timeliness of Payments*

"The determination of whether [an insurer] acted in an arbitrary and capricious manner or in bad faith in its refusal to fairly and quickly settle its insured's claim is a question of fact which will be reviewed on appeal under the manifest error standard of review." *Urrate v. Argonaut Great Cent. Ins. Co.*, 04-256, p. 7 (La.App. 5 Cir. 8/31/04), 881 So.2d 787, 791, *writs denied*, 04-2644, 04-2685 (La. 01/07/05), 891 So.2d 686, 690. This court "may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Stobart v. State through Dept. of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). Thus, in order to reverse the jury's verdict, this court must find: (1) that record does not reflect a reasonable factual basis for the finding of fact; and (2) that the record establishes that the finding of fact is clearly wrong. *Id.*

LFBC asserts that the jury's conclusion that LFBC's payments to Plaintiffs were untimely is not supported by the evidence or testimony in this case. LFBC argues that the "overwhelming evidence" shows that it promptly inspected the property and issued payment upon receipt of satisfactory proof of loss well within the time limits imposed by La.R.S. 22:1973 and 22:1892. Specifically, LFBC points to the testimony of Daigle regarding the inspection of the property in September 2020, in the presence of Plaintiffs. Daigle testified that he included all visible damages that they observed in his estimate and that Plaintiffs did not contact him to inform him of anything left out of the estimate. LFBC also alleges

8

that it presented uncontested testimony and documentary evidence that the post-Delta October 19, 2020 payment was issued on or about the same day as Trahan's inspection. LFBC also argues that the December 1, 2020 supplemental payment was issued the same day that it received the invoice for the full roof replacement; that the December 8, 2020 payment was issued the same day that Plaintiffs submitted the invoice for remediation services; that the December 10, 2020 payment was issued the same day that the invoice for air conditioner repairs was submitted; and that the August 19, 2021 payment was made after it decided to issue a payment for the remainder of the Coverage A policy limits to resolve the claim. According to LFBC, the only significant delays in processing this claim resulted from Sonnier's arbitrary and capricious failure to submit his estimate despite numerous requests.

Plaintiffs argue, on the other hand, that LFBC's argument concerning the timeliness of its payments fails based on what constitutes satisfactory proof of loss under Louisiana law. The statutory obligation to inspect the property and provide payment for the undisputed damages rests on the insurer, and Plaintiffs point out that LFBC's argument improperly shifts the burden to them or to the public adjuster that they hired. However, "[t]he party claiming entitlement to penalties and attorney fees for bad faith claims handling has the burden of proving: (1) the insurer received satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period; and (3) the insurer's failure to pay was arbitrary." *Aghighi v. La. Citizens Prop. Ins. Corp.*, 12-1096, p. 4 (La.App. 4 Cir. 6/19/13), 119 So.3d 930, 933, *writ denied*, 13-1737 (La. 10/30/13), 124 So.3d 1102. "Satisfactory proof of loss . . . is that which is sufficient to fully apprise the insurer of the claim and extent of the damage." *Id*. at 934.

9

"A personal inspection of an insured's property by an adjuster for the insurance company also constitutes satisfactory proof of loss." *J.R.A., Inc. v. Essex Ins. Co.*, 10-797, pp. 32-33 (La.App. 4 Cir. 5/27/11), 72 So.3d 862, 881.

> The insurer's duty under La.R.S. 22:1892 mandates more than merely sending an adjuster to the insured's property to take pictures and calculate numbers on less than all the damage. It would defeat the purpose of the statute to allow an inadequate and unreasonably low adjustment, done within the requisite time delays, to satisfy the insurer's obligation to the insured. Likewise, allowing a "readjustment" done approximately six months later to cure the original bad conduct without any penalty would be condoning the insurer's actions.

*Aghighi*, 119 So.3d at 935.

In this case, the jury concluded that LFBC had satisfactory proof of loss at the time of its original inspection, and we find no manifest error in the jury's finding. Although LFBC assigns as error that the jury abused its discretion by awarding excessive damages and statutory penalties, it does not argue this point in brief. We, therefore, consider this assignment of error to be abandoned. Uniform Rules of Court—Courts of Appeal, Rule 2–12.4(B)(4).

*Admissibility of Evidence of Additional Living Expenses*

LFBC argues that the trial court abused its discretion by permitting Plaintiffs to present evidence and argument concerning their voluntary decision to live in a camper on their own property in support of their claim for bad faith while denying LFBC the opportunity to fully cross examine plaintiffs and to present evidence to contradict Plaintiffs' testimony. Specifically, LFBC argues that Plaintiffs withdrew their claims for additional living expenses because they were not entitled to recover them under the terms of the policy such that any testimony in this regard was irrelevant. LFBC also argues that it was not allowed to question Plaintiffs regarding Mrs. Guillory's claim for mental anguish damages in a separate lawsuit seeking to recover for hurricane related damages to her beauty salon. But, as

10

pointed out by Plaintiffs, Mrs. Guillory did testify that the damage to her salon caused her stress and anxiety.

Plaintiffs assert that the evidence that they were not able to live in their home for nearly two years after the hurricanes because of LFBC's failure to reasonably and timely compensate them for repairs to their home was introduced to show the anguish associated with seeing it in disrepair for such a long time.

It is well settled that it is proper to award damages for mental anguish resulting from an insurer's breach of its duties. *Orellana v. La. Citizens Prop. Ins. Co.*, 07-1095 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252, *writ denied*, 08-41 (La. 10/24/08), 25 So.3d 777. In *Orellana*, the court noted that the plaintiff "had to watch his home sustain ongoing damage as a result of Louisiana Citizens' decision to not pay timely insurance payments[.]" *Id*. at 1256 (footnote omitted). For these reasons, we find that Plaintiffs' testimony was relevant to their claims for mental anguish damages and that the trial court did not abuse its discretion in allowing it.

*Costs*

"The district court has great discretion in awarding costs, including expert witness fess, deposition costs, exhibit costs, and related expenses." *Reynolds v. La. Dept. of Transp.*, 15-1304, p. 4 (La.App. 1 Cir. 4/16/16), 194 So.3d 56, 59. The trial court's assessment of costs will not be disturbed on appeal absent an abuse of discretion. *Id*.

The trial court taxed "all costs of the prosecution of the claims by [P]lantiffs" to LFBC. In addition to those costs, the trial court taxed a total of $16,875.88, which included expert fees and fees for depositions and exhibits used at trial, as additional costs that LFBC was required to pay. The judgment specifically identified those amounts.

LFBC argues that several of those items are not taxable under La.Code Civ.P. art. 1920. Specifically, LFBC takes issue with certain costs it identifies as unnecessary, including amounts for exhibits and depositions that were not used at trial. LFBC also objects to the expenses associated with the mock jury and the jury consultant. LFBC argues that these items are not recoverable under La.Code Civ.P. art. 1920.

"Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable pursuant to La.C.C.P. art. 1920, which has been liberally interpreted as granting broad discretion to the trial court." *Carr & Assoc., Inc. v. Jones*, 22-946, p. 8 (La. App. 1 Cir. 5/10/23), ___ So.3d ___. "[T]he only costs which can be taxed against a litigant are those specifically provided for by statute." *Id*. "The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, **and all other costs allowed by the court**, shall be taxed as costs." La.R.S. 13:4533 (emphasis added). The jurisprudence recognizes that "the positive law in this instance allows for discretion on the part of the trial court to set costs other than those specifically enumerated, as equitable." *Barre-Williams v. Ware*, 20-665, p. 6 (La.App. 4 Cir. 4/28/21), 365 So.3d 760, 769. There is support in the jurisprudence for the award of costs for depositions not introduced at trial. For example, in *Butler v. LAMMICO*, 15-1191, p. 10 (La.App. 4 Cir. 5/25/16), 195 So.3d 570, 577, the court stated that: "costs necessary to bring a case to trial, though not expressly introduced into evidence, are within the trial court's discretion to tax." "[T]he trial court judge is in a better posture to determine what costs were necessary to bring the case to trial." *Id*. We find that the same reasoning applies to the expenses incurred for the mock trial and jury consultant.

12

Louisiana Revised Statutes 22:1892(B)(1)(a) provides for a penalty, attorney fees, and costs. Plaintiffs argue that this allows the recovery of all costs incurred by a plaintiff, without restriction to the ordinary taxable costs, as a penalty and that to interpret the use of the term "costs" in La.R.S. 22:1892 as limited to those allowable in any suit would render its use meaningless and superfluous. We agree and affirm the entirety of the trial court's award of costs in this matter.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the denial of the motion to recuse, the jury's verdict and the trial court's judgment signed in accordance therewith, and the trial court's award of costs. All costs of this appeal are assessed to the Defendant/Appellant, Louisiana Farm Bureau Casualty Insurance Company.

**AFFIRMED.**